840 F.2d 11
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mary STEPHENS, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 87-3817.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 6, 1988.
Decided Feb. 16, 1988.
 
 Howard Steven Suskin (Raymond T. Reott, Jenner & Block on brief) for appellant.
 Bette J. Briggs, U.S. Department of Labor (George R. Salem, Solicitor of Labor, Allen H. Feldman, Associate Solicitor for Special Appellate and Supreme Court Litigation, Mary-Helen Mautner, Counsel for appellate Litigation on brief) for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, DONALD RUSSELL and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Leonard Stephens worked underground as a coal miner from 1942 until his death in 1953. In 1953, Mr. Stephens was seriously injured when slate fell on him in the mine. He died from a massive pulmonary embolism which resulted from these injuries. On May 16, 1975, his wife, the petitioner-claimant, Mary Stephens, filed a claim for black lung benefits as the surviving spouse of a deceased coal miner. On her claim form, Ms. Stephens alleged that prior to his death her husband had had pneumoconiosis, and described his degree of disability by saying that he "coughed constantly [and had] shortness of breath." She admitted that the cause of his death was accidental. It is undisputed that Ms. Stephens' husband was working full-time at a coal mine at the time of his death.
 
 
 2
 The Office of Workers' Compensation Programs (OWCP), upon receipt of her application for benefits, sent Ms. Stephens a request for further information. When she failed to respond, the office denied her claim by letter dated December 4, 1980. This form letter, code-named CM-1000c, set out the reasons for OWCP denying her claim and also listed various actions she could take if she wished to further pursue the claim. The letter informed Ms. Stephens that if she did not take some action to pursue her claim within 60 days her file would be closed.
 
 
 3
 Approximately one year later, on December 18, 1981, Ms. Stephens filed a request for reconsideration of her claim, and asked that it be reexamined under the benefit eligibility requirements in effect when it was originally submitted. The basis of her request was her allegation that the form letter sent to her by OWCP after it initially denied her claims, letter CM-1000c, was so confusing and replete with "beauracratese" that it was unintelligible and, therefore, did not amount to "notice" that her claim was about to be foreclosed. She had, she argued, been deprived, therefore, of property rights in her black lung benefits without due process of law. If her original claim were not to be reconsidered, Ms. Stephens asked in the alternative that her request be construed as the filing of a new claim.
 
 
 4
 On March 1, 1982, OWCP again denied Ms. Stephens' claim on grounds that she had failed to prove that her husband was totally disabled due to pneumoconiosis caused at least in part by coal mine work. At a hearing following this denial, Ms. Stephens attempted to prove her husband's total disability by testimony from her husband's sister that he had had coughing spells. In addition, Ms. Stephens herself testified that her husband often had little appetite, coughed a lot, and smoked no more than half a pack of cigarettes daily. He also, she stated, became less active as he worked in the mines and didn't go out "as much as he did before." She admitted that he walked five miles to work each day, and continued to load coal in the mines.
 
 
 5
 The Administrative Law Judge (ALJ) hearing the case rejected Ms. Stephens' claim for benefits. The ALJ determined that the form letter sent to Ms. Stephens informing her that her original claim had been denied was constitutionally sufficient notice. Her failure to timely follow up on this letter, therefore, barred her from reopening that claim.
 
 
 6
 The ALJ then considered Ms. Stephens' request for reconsideration as the filing of a new claim. The ALJ reviewed the "new" claim in light of the benefits standards in effect in 1981. 718.204(c)(5) (1987). Finding that Ms. Stephens had failed to prove her former husband's total disability due to pneumoconiosis, as required by the standards, the ALJ denied her benefits on this ground also. The Benefits Review Board (BRB) affirmed the ALJ on its first ground listed above, and also affirmed based on other grounds the BRB arrived at independently. We affirm.
 
 
 7
 The primary thrust of Ms. Stephens' argument on appeal is that the form letter sent by OWCP was so difficult to understand, particularly for someone like her with only an eighth grade education, that it failed to give her adequate notice of her rights to further pursue her claim. It follows, Ms. Stephens contends, that she was deprived of her property interest in black lung benefits without due process of law.
 
 
 8
 Ms. Stephens makes this due process argument as part of her attempt to reopen her original claim filed in 1975. Allowing her to reopen the original claim is important, in her view, because the standards for awarding benefits were more lax when she filed the original claim than in 1981.
 
 
 9
 Ms. Stephens' argument, however, appears misdirected. Although the standards for award of benefits under the "old" regulations, at 20 C.F.R. 727.203(a)(5), in effect when Ms. Stephens originally filed, may generally have been more lax than the "new" standards, at 20 C.F.R. 718.204(c)(5) (1987), both require a finding that Ms. Stephens' husband was "totally disabled" by pneumoconiosis. Ms. Stephens was unable to persuade the ALJ, who considered her argument on its merits, that her husband had been totally disabled by black lung. The ALJ found that Mr. Stephens continued to load coal in the mines until the day he was accidentally killed, that he walked five miles to work each day, that he did chores around the house and that he was a part-time preacher on weekends. Based on this evidence the ALJ found that Ms. Stephens' husband was not totally disabled.
 
 
 10
 The ALJ's finding bars Ms. Stephens' claim under either the "old" standards in place when she filed in 1975 or the "new" standards in place in 1981. Any defect in the form letter which OWCP sent to her after it denied her original claim is therefore harmless. We find no error in the ALJ's determination that Ms. Stephens' husband was not totally disabled, and we affirm the decision and order of the BRB on this basis.
 
 
 11
 AFFIRMED.